UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RICHARD STORLIE,

               Plaintiff,            Case No. 2:09-cv-02205-GMN-PAL

vs.                                        **ORDER**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,            (Emg. Mot Compel - Dkt. #16)

               Defendant.

The court conducted a hearing on Defendant's Emergency Motion to Compel Medical Examination of Plaintiff Richard Storlie (Dkt. #16) on August 19, 2010. Leslie M. Stovall and Alexander G. LeVeque appeared with the Plaintiff, and Jeffrey D. Olster appeared on behalf of the Defendant. The court has considered the motion, Plaintiff's opposition (Dkt. #21), Defendant's reply (Dkt. #28) and the arguments of counsel at the hearing.

**BACKGROUND**

The Complaint in this case was filed October 13, 2009 (Dkt. #1). It is an action filed by an insured of State Farm to recover underinsured motorist ("UIM") benefits arising out of a December 26, 2008 motor vehicle accident. The action was initially filed in state court and removed (Dkt. #1) by the Defendant November 18, 2009. Defendant filed an Answer (Dkt. #4) November 4, 2009. The parties failed to file a proposed stipulated Discovery Plan and Scheduling Order as required by Local Rule 26-1. Accordingly, on January 19, 2010, the undersigned entered a Discovery Plan and Scheduling Order (Dkt. #9) giving the parties 180 days, measured from Defendant's Answer in which to complete discovery. The court's Discovery Plan and Scheduling Order was consistent with the presumptively reasonable deadlines outlined in Local Rul 26-1(e). The initial Discovery Plan and Scheduling Order

established a May 24, 2010 discovery cutoff, a March 24, 2010 deadline for disclosing experts, and an April 23, 2010 deadline for disclosing rebuttal experts.

On March 13, 2010, the parties submitted a stipulation (Dkt. #11) requesting a ninety-day extension of the Discovery Plan and Scheduling Order deadlines. The court approved the parties stipulation in an order (Dkt. #13) entered March 16, 2010. The discovery cutoff was extended until August 22, 2010. The deadline for disclosing experts was extended until June 22, 2010, and the deadlines for disclosing rebuttal experts was extended until July 22, 2010.

The current motion was filed two days before the expiration of the extended deadline for disclosing rebuttal experts. The motion, which is supported by the declaration of counsel, Jeffrey D. Olster, asserts there is good cause for compelling the Plaintiff to present for an independent medical examination on two separate grounds. First the Plaintiff has put his medical condition at issue in this lawsuit, and second, he has a contractual obligation to State Farm to submit to an independent medical examination. Counsel for State Farm first requested that Plaintiff submit to an independent medical examination June 23, 2010. On June 24, 2010, counsel for Plaintiff indicated he would not agree to produce the Plaintiff for an independent medical examination, indicating that if one was requested, State Farm should file a Rule 35 motion with the court. Counsel for State Farm attempted to resolve this matter without judicial intervention in a follow-up letter dated June 28, 2010. In the letter, counsel for State Farm reiterated the Defendant's position that the Plaintiff insured had a duty under its insurance policy to submit to an independent medical examination. Counsel for Plaintiff responded in a letter dated June 29, 2010 stating Plaintiff's position that State Farm had breached its duties to its insured under its uninsured/underinsured motorist ("UM/UIM") policy, and it failed to timely investigate and adjust the Plaintiff's claim. He again invited counsel for State Farm to file a motion with the court.

State Farm argues that it was not until recently that State Farm obtained all of the Plaintiff's medical records which were needed in order to facilitate a meaningful and complete independent medical examination. Counsel for State Farm points out that Plaintiff has had a lengthy medical history, which include two prior spinal surgeries and had a consultation with a pain management specialist approximately one week prior to the accident involved in this case. Under these

circumstances, the court should enter an order compelling Plaintiff to present to an independent medical examination. State Farm argues that independent medical examinations are routine and customary and that counsel for Plaintiff's failure to engage in meaningful dialogue regarding the proposed timing and terms of the examination require a court order pursuant to Rule 35.

Plaintiff opposes the motion, representing that on January 12, 2009, counsel for Plaintiff contacted State Farm indicating the law firm represented the Plaintiff. On January 13, 2009, State Farm first received the Plaintiff's emergency room records from Sunrise Hospital. The emergency room records indicated that Plaintiff had a pre-existing cervical injury for which he received a surgical repair in 2004. Between January and May 2009, State Farm received more records from the Plaintiff's primary treating physician. On May 8, 2009, Plaintiff sent a demand package containing multiple medical records. An activity log in State Farm's claim file indicates that on May 22, 2009, State Farm concluded that the claim did not substantiate a policy limit payment of $100,000.00. State Farm sent a letter to the Plaintiff dated May 22, 2009 enclosing medical authorization forms for the Plaintiff to execute, and indicating State Farm would "hold off extending an offer with respect to UM coverage until our file is complete." *See* May 22, 2009 letter attached as Exhibit "7" to Plaintiff's opposition.

Counsel for Plaintiff declined State Farm's request to execute a general release for medical information, but provided Defendant with a list of treating medical providers, and indicated Plaintiff would execute provider-specific releases. Counsel for Plaintiff asserts, and State Farm does not dispute, that State Farm did not request provider-specific releases.

On June 22, 2009, State Farm received a surgical cost estimate from Dr. Muir indicating that he recommended a surgical procedure to alleviate Plaintiff's complaints of pain on the same day counsel for Plaintiff renewed Plaintiff's demand for policy limits of $100,000.00. *See* letter attached as Exhibit "9" to Plaintiff's opposition.

On July 15, 2009, counsel for Plaintiff sent State Farm a letter memorializing a telephone conversation on July 14, 2009, that State Farm would not tender its policy limits. The letter indicated that the Plaintiff would execute the general medical authorization release provided by State Farm "with the understanding that State Farm will diligently and timely request, acquire, and review the relevant records." *See* July 15, 2009 letter attached as Exhibit "11" to Plaintiff's opposition.

3

On July 17, 2009, Plaintiff's counsel requested that State Farm advance undisputed amounts of the settlement to Plaintiff so that he could pay his medical bills which were in collection. *See* activity log excerpt attached as Exhibit "12" to Plaintiff's opposition. However, State Farm declined to do so indicating in an activity log entry that "in similar situations, reputable firms should be able to arrange NI to obtain necessary TX on a lien basis. Therefore, it does not appear reasonable to provide advanced settlement." *Id.*

Counsel for Plaintiff sent follow-up correspondence to State Farm September 1, 2009 inquiring whether State Farm had contacted the Plaintiff's employer for wage loss information, and had received medical records from Dr. Johnson relating to Plaintiff's prior surgery. *See* September 1, 2009 attached as Exhibit "15" to Plaintiff's opposition. Defendant requested the records from Dr. Johnson at MeritCare three days later. *See* activity log attached as Exhibit "16" to Plaintiff's opposition. These records were received September 14, 2009. *See* Exhibit "17" to Plaintiff's opposition. State Farm sent a letter to Dr. Muir requesting more information on Plaintiff's diagnosis and recommended treatment October 13, 2009. *See* October 13, 2009 letter to Dr. Muir attached as Exhibit "18" to Plaintiff's opposition.

Plaintiff argues that State Farm's request for an independent medical examination is untimely given the claims handling history, and the procedural history of this lawsuit. Counsel for State Farm did not request an IME until one day after the ninety (90) day extension of the deadlines for disclosing experts and did not file this motion until three (3) days before the ninety (90) day extension of the deadline for disclosing rebuttal experts. Plaintiff also argues that Defendant has not complied with the requirements of Rule 35(a)(2)(A) & (B). Specifically, Plaintiff argues that Defendant has not shown good cause, and that the request does not specify the time, manner, conditions and scope of the examination sought.

State Farm's reply brief reiterates its argument that it has two separate and independent grounds upon which to request a medical examination of the Plaintiff. First, State Farm is entitled to the medical examination pursuant to the unambiguous language of the State Farm policy. Second, State Farm claims that, because Plaintiff's medical condition is undisputedly in controversy in this case, the Supreme Court's decision in *Schlagenhaf v. Holder*, 379 U.S. 104, 119 (1964), establishes good cause

for purposes of Rule 35 as a matter of law. State Farm's reply also points out that Plaintiff does not address it contractual arguments in the opposition. State Farm argues that Plaintiff has a contractual duty to submit to a medical examination regardless of whether the examiner it has selected, Dr. Serfustini, testifies as an expert in this lawsuit.

State Farm contends that its alleged lack of diligence does not absolve Plaintiff of his duty to submit to a medical examination. State Farm also disputes that it was dilatory in seeking the medical examination and asserts that Plaintiff did not initially assert a UM/UIM claim until May 8, 2009. Counsel for State Farm acknowledges that it provided Plaintiff's counsel with a medical authorization form on January 21, 2009 "so that State Farm could begin its potential claim investigation." However, it was not until July 14, 2009 that Plaintiff's counsel agreed to sign the medical authorization form provided by State Farm. State Farm began the process of collecting Plaintiff's medical records after receiving the authorization form, and Plaintiff's list of medical providers. Once this suit was filed, efforts to obtain Plaintiff's complete medical records continued through defense counsel.

State Farm's reply emphasizes that the issue of whether or not Dr. Serfustini may testify as an expert in this case is not before the court in this motion. State Farm persists in its arguments that it is entitled to the requested medical examination pursuant to its policy, and that the examination is needed to complete the evaluation of Plaintiff's claim for UM/UIM benefits.

## DISCUSSION

Federal Rule of Civil Procedure 35 authorizes the court where an action is pending to order a party whose physical condition is in controversy to submit to a physical examination by a suitably licensed or certified examiner. The rule is permissive, not mandatory. "The court where the action is pending *may* order a party whose mental or physical condition–including blood group–is in controversy to submit to a physical and mental examination by a suitably licensed or certified examiner." Rule 35(a)(1). A party seeking an order pursuant to Rule 35 must file a motion showing good cause with notice to all parties and the person to be examined. Rule 35(a)(2)(A). Additionally, the order "must specify the time, place, manner, conditions and scope of the examination, as well as the person or persons who will perform it." Rule 35(a)(2)(B). The burden is on the party moving for an order pursuant to Rule 35 to show that a person's medical condition is "in controversy" and that good cause

1 exists for a mental or physical examination. *Schlagenhauf v. Holder*, 379 U.S. 104 (1964). However, even if the moving party establishes both elements, it is still within the sound discretion of the trial court to determine whether to order the examination. *Hardy v. Riser*, 309 F. Supp. 1234, 1241 (N. D. Miss.1970) (" Even when the'good cause' and 'in controversy' requirements are met, it is still in the sound discretion of the trial court whether to order the examination"); *Shirsat v. Mutual Pharm. Co.*, 169 F.R.D. 68, 70 (E. D. Pa. 1996).

Although State Farm's motion proposes the retention of Las Vegas Physician, Dr. Anthony Serfustini, to conduct the medical examination and indicates Dr. Serfustini is available to perform the examination on August 24, 2010, the motion does not specify the proposed manner, conditions, and scope of the examination. Rather, the motion states, in conclusory fashion, that the "examination will be orthopaedic in nature and focus on the areas of Plaintiff's body that he claims were injured in the subject accident (namely, Plaintiff's cervical spine)."

It is undisputed that counsel for State Farm did not request that Plaintiff submit to an independent medical examination until June 23, 2010. This was one day after the expiration of the deadline for disclosing experts which had already been extended ninety (90) days pursuant to the parties' stipulation and the court's order. It is also undisputed that on June 24, 2010, counsel for Plaintiff indicated that he would not agree to produce the Plaintiff for an independent medical examination, indicating that if one was requested, State Farm should apply to the court for an order. Counsel for State Farm did not apply to the court for an order until July 19, 2010, three days before the extended expiration of the deadline for disclosing rebuttal experts. Between June 28 and June 29, 2010, counsel for State Farm attempted to resolve this dispute without the court's intervention. However, on June 29, 2010, counsel for Plaintiff reiterated Plaintiff's position that State Farm had breached its duties to the Plaintiff under its policy by failing to timely investigate and adjust his claim, and that Plaintiff would not agree to an independent medical examination. Yet, it took counsel for State Farm an additional three weeks to file the instant motion. The date proposed for the independent medical examination is August 24, 2010, two days after the extended discovery cutoff.

It is undisputed that before this lawsuit was filed, counsel for Plaintiff initially declined State Farm's request to execute a general medical authorization release, but offered to execute provider-

1  specific releases to enable State Farm to obtain relevant medical records.  *See* June 15, 2009 letter from
2  counsel for Plaintiff to State Farm attached as Exhibit "8" to Plaintiff's opposition.  It is also
3  undisputed that after the parties were unable to resolve Plaintiff's demands for a policy limit settlement,
4  counsel for Plaintiff relented and had Plaintiff execute the general medical authorization release form
5  provided by State Farm "with the understanding that State Farm will diligently and timely request,
6  acquire, and review the relevant medical records."  *See* July 15, 2009 letter from counsel for Plaintiff to
7  State Farm, and authorization release form attached as Exhibit "11" to Plaintiff's opposition.  Thus,
8  State Farm has had an executed general medical authorization release from the Plaintiff since July 2009,
9  nearly one year before it  requested an independent medical examination.  Under these circumstances,
10 the court finds State Farm's June 23, 2010 request for an independent medical examination is untimely.
11 Granting the request would interfere with this court's Discovery Plan and Scheduling Order, delay these
12 proceedings, and require Plaintiff to incur additional expense in deposing the independent medical
13 examiner and potentially being required to retain an additional expert to rebut his findings.
14        Because of heavy case loads, trial courts enter scheduling orders "to establish deadlines to foster
15 the efficient treatment and resolution of cases."  *Wong v. Regents of the University of California*, 410,
16 F.3d 1052, 1060 (9th Cir. 2005).  A trial court's case management efforts "will be successful only if the
17 deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the
18 deadlines."  *Id*. at 1061.  Failure to comply with scheduling order deadlines "may properly support
19 severe sanctions and the exclusion of evidence."  *Id*.  Courts establish discovery plans and scheduling
20 orders "to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them,
21 unless there are good reasons not to." *Id.* at 1062.  The Ninth Circuit has recognized that disruption of
22 the court's discovery plan and scheduling order "is not harmless." *Id*.
23        Counsel for State Farm claims that "it was not until June 30, 2010 that State Farm finally
24 received reasonably complete records for Plaintiff."  As it is undisputed Plaintiff executed a general
25 medical authorization release July 15, 2009, and State Farm received emergency room records and other
26 medical records from Plaintiff's counsel long before this lawsuit was filed indicating Plaintiff had prior
27 spinal surgery,  the court finds State Farm's failure to obtain all of the medical records it deemed
28 ///

necessary before requesting an independent medical examination was the result of its own lack of diligence.

For all of the foregoing reasons,

**IT IS ORDERED** that:

1. State Farm's Emergency Motion to Compel Examination of Plaintiff Richard Storlie (Dkt. #16) is **DENIED**.

Dated this 25th day of August, 2010.

_____
Peggy A. Leen
United States Magistrate Judge